DREW, J.
liHurchel Kendrick[1] appeals from a summary judgment dismissing his claim for wrongful termination. For the following reasons, we reverse and remand this case to the trial court for further proceedings, rejecting the demand of the appellee, Hercules Concrete Pumping Services of Mississippi, Inc. (“Hercules”), for damages for frivolous appeal.
FACTS
Mr. Kendrick was employed with Hercules for many years as a concrete pump truck operator.[2] On March 18,2013, he was washing out the hopper of the pump truck when a gust of wind jerked the wooden board he was holding out of his hand. That incident injured Kendrick’s left shoulder and required medical treatment, including surgery. Hercules paid Kendrick over $30,000 in medical benefits and over $6,000 in workers’ compensation indemnity benefits. Since the operation was successful, Kendrick returned to work at his old job.
In December 2014, Hercules’ workers’ compensation insurance adjuster began negotiating a final settlement of this claim with the unrepresented Kendrick. The insurer offered Kendrick $8,500 for a release, and Kendrick accepted the offer. At his deposition, Kendrick explained that during the negotiation, the insurer put no other conditions on the settlement. Specifically, Kendrick said that the parties did not discuss his resignation from work at Hercules as a condition of the settlement. Because the | .¿lump-sum settlement had to be approved by the Office of Workers’ Compensation, the parties set the matter for a hearing on January 29, 2015.
In the meantime, on January 28, 2015, while working on a Hercules pump truck, Kendrick fell off the back of the truck. Kendrick’s foot got caught on the truck’s ladder, and he claimed that the fall caused him to injure his leg and back. At his deposition, Kendrick explained the following events:
I called Paul [Shelley, the president and CEO of Hercules] and told him that I had fallen off the truck, that I was just trying to let him be aware of the incident, because when I had hurt my left shoulder I didn’t report it immediately. I tried to not—was thinking I wasn’t hurt. And I was just basically letting him be aware of the incident, that I had—that I had fallen and I wanted to make the report.
[[Image here]]
Paul went into—actually, he kind of went to raising sand with me about safety and that we had to, you know, be careful, and this and that and the other, and more or less going over his safety issues, and that he had—he had a bunch of people already getting hurt on the job, had workmen’s comp injuries, and he couldn’t afford any more claims, and that if I was hurt he was going to have to cut me loose.
[[Image here]]
Well, I told Paul, I said, “I’m on my way home. I’m not trying to be hurt. I understand that, you know, we don’t need any more claims, and I was just letting you be aware of the—not the injury, but the fall, that I didn’t know how—how bad I *263 was hurt or not, but I wanted to let you be aware that I had fallen.
Kendrick clarified what Shelley told him:
Paul told me, bottom line what you’re asking was that he had ... too many workmen’s comp claims against his company already, that he couldn’t afford any more workmen’s comp, that if I was hurt, he was going to have to cut me loose. He could not afford to have anybody else on his workmen’s comp.
Kendrick said that after he got home, Shelly called and told him to go to the doctor for X-rays and an examination. Shelly instructed Kendrick to send the results to him before returning to work. Kendrick went to the Inhospital, where he met a Hercules representative who paid Kendrick’s personal health insurance deductible. He was seen by a doctor but not treated, and the doctor would not provide him a work release because Kendrick required no treatment.
Kendrick took the next day off to con-fect the settlement of his 2013 workers’ compensation claim. He went to the office of the law firm representing Hercules where he signed several documents pertinent to the settlement. Kendrick admitted, “I didn’t read these documents. I briefed over them.”
One of the documents, titled “RELEASE,” contained the following paragraph:
In further consideration and as part and parcel of this settlement, the undersigned does hereby voluntarily resign from his employment with HERCULES CONCRETE PUMPING SERVICES OF MS, INC. and does further hereby release HERCULES CONCRETE PUMPING SERVICES OF MS, INC. from any and all liability, of any nature or kind whatsoever, arising out of his employment with HERCULES CONCRETE PUMPING SERVICES OF MS, INC. including, without limitation, any and all claims HURSCHEL KENDRICK may have under federal and state labor or employment laws and under federal and state tort laws.
This document is in authentic form, notarized in the presence of two witnesses. That same day, Kendrick and the Hercules attorneys went before Judge Brenza Irving Jones, who approved the settlement. The Hercules attorney gave Kendrick a check for $8,500. Later that day, Shelley called Kendrick and instructed him to have the X-rays sent to the company, where Shelley could look at them. Kendrick said that Shelley told him not to return to work until Shelley had the X-rays.
The next day, Kendrick went to the company’s Louisiana office and faxed the doctor’s report to the Mississippi office. Kendrick said:
|4When I got back later that afternoon when [Shelley] got the papers in his hand, he called me back and told me that he would no longer be able to use me, that he was going to lay me off because we were slow at work, which was a complete lie. We were not slow at work. We had plenty of work.
Kendrick said that there was no discussion of his voluntary resignation, and that his supervisor, Mark Knopp, told him that the company very much needed his services and could not believe that Kendrick had been fired.
In July 2015, Kendrick filed a tort action against Hercules in district court. Kendrick alleged that he was fired from Hercules because he was exercising his right to workers’ compensation. Kendrick asserted that this action was illegal under La. R.S. 23:1361, et seq., and demanded a year’s salary along with his attorney fees.
After discovery, including Kendrick’s deposition, which is partially quoted above, *264 Hercules filed a motion for summary judgment. Hercules urged that Kendrick had no claim for wrongful discharge because he had voluntarily resigned from his employment as a part of the settlement of his March 2013 compensation claim. In support, Hercules offered Kendrick’s deposition, the settlement documents including the release containing Kendrick’s resignation, and the affidavit of Paul Shelley. Shelley’s affidavit stated, in part:
[A]s part of the consideration for agreeing to the lump sum settlement, Kendrick voluntarily terminated his employment with Hercules; that on January 29, 2015, Kendrick executed documents agreeing to voluntarily terminate his employment with Hercules; [and] that neither I nor anyone else associated with Hercules retaliated against Kendrick due to his assertion of his workers’ compensation claims[.]
Kendrick, now represented by counsel, filed an opposition to Herculés’ motion and a cross-motion for summary judgment in Kendrick’s favor, relying upon his own deposition, the settlement documents, and an affidavit he recently executed. The plaintiffs affidavit states, in part:
| fi[W]hen [Kendrick] negotiated with the workers’ compensation adjuster in approximately December of 2014, which negotiations concerned possible settlement of his workers’ compensation claim arising from the March 18, 2013, accident, there was no discussion whatsoever of any requirement that he resign from his employment^]
[[Image here]]
[T]hat after the judge approved the settlement, he signed the paperwork submitted to him by Defendant’s attorneys, and no mention was made of any requirement that he resign from employment; that in his conversations with Paul Shelley ... after his work-related accident of January 28, 2015, Mr. Shelley made no mention whatsoever of any resignation from employment having been executed by him; rather, Mr. Shelley told him approximately one and a half hours after the accident that, if he was hurt, he would have to “cut him loose” because he could not stand another workers’ compensation claim; that, when he talked to Mr. Shelley on the afternoon of January 30, 2015, Mr, Shelley told him he was having to let him go because of lack of work; that he talked to his supervisor, Mark Knopp, who indicated to him that there was plenty of work and that he needed Plaintiff to return to work as soon as possible.
The trial court heard arguments on the motions in April of 2016. With thoughtful reasons for judgment, the court concluded that Mr. Kendrick’s unforced, uncoerced decision to sign the release form—which Kendrick admitted that he did not read'— bound Kendrick to the terms included therein, including the voluntary termination of his employment. Because Kendrick was bound by the terms of this agreement, the court reasoned, Kendrick could not make a prima facie case of wrongful termination under La. R.S. 23:1361. Thereafter, the court signed a judgment dismissing Kendrick’s action with prejudice, and Kendrick now appeals. Hercules has answered Kendrick’s appeal, seeking damages for frivolous appeal.
DISCUSSION
Mr. Kendrick’s assignments of error on appeal are:
1. The Workers’ Compensation Judge erred in granting Defendant-Appel-lee’s Motion for Summary Judgment and thereby dismissing Appellant’s retaliatory discharge claim.
|n2. The Honorable Trial Judge erred in failing to grant Appellant’s Cross-Mo *265 tion for Summary Judgment, thereby failing to award the penalty of one year’s wages plus attorney fees and court costs and legal interest.
La. R.S. 23:1361 defines the cause of action for wrongful discharge relating to a workers’ compensation claim, and provides in part:
B. No person shall discharge an employee from employment because of said employee having asserted a claim for benefits under the provisions of this Chapter or under the law of any state or of the United- States. Nothing in this Chapter shall prohibit an employer from discharging an employee who because of injury can no longer perform the duties of his employment.
C. Any person who has been denied employment or discharged from employment in violation of the provisions of this Section shall be entitled to recover from the employer or prospective employer who has violated the provisions of this Section a civil penalty which shall be the equivalent of the amount the employee would have earned but for the discrimination based upon the starting salary of the position sought or the earnings of the employee at the time of the discharge, as the case may be, but not more than one year’s earnings, together with reasonable attorney’s fees and court costs.
In Hansford v. St. Francis Med. Center, Inc., 43,984 (La.App. 2 Cir. 1/14/09), 999 So.2d 1238, this Court explained:
The purpose of this statute is to prevent unjust dismissals and to allow employees to exercise their right to workers’ compensation benefits without fear of retaliatory action by their employers.
In order to be entitled to recover for retaliatory discharge under La. R.S. 23:1361, the employee must establish by a preponderance of the evidence that she was discharged because she asserted a workers’ compensation claim, either by presenting direct evidence that the assertion of a workers’ compensation claim was the reason for the discharge or by presenting circumstantial evidence sufficient to establish more probably than not that- the reason for the discharge was the assertion of the workers’ compensation claim.
If the employer gives an alternative nondiscriminatory reason for the discharge, and presents sufficient evidence to prove more probably than not that the real reason for the employee’s discharge was something other than the assertion of the workers’ compensation claim, the plaintiff is precluded from recovery. If the employer offers another reason for firing the workers’ | ^compensation claimant, the trial court must ascertain the employer’s true reason or motive based on the facts presented. If the trial court finds that it is more probable than not that the employer’s nondiscriminatory explanation for the discharge is just a guise for retaliatory discharge, the employee is entitled to recovery. Timing of the dismissal alone is insufficient to carry the employee’s burden of proof. Employee fault may be a sufficient independent basis for termination coincident with the employee’s filing of a compensation claim.
Hansford, supra, at pp. 1241-1242. Citations omitted.
Because this case was decided on summary judgment rather than after a trial, the manifest error standard of review does not apply in this case; instead, we review the granting of summary judgment de novo. Peironnet v. Matador Res. Co., 2012-2292 (La. 6/28/13), 144 So.3d 791; Schroeder v. Board of Sup’rs of La. State Univ., 591 So.2d 342 (La. 1991).
*266 The motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Schultz v. Guoth, 2010-0343 (La. 1/19/11), 57 So.3d 1002; Samaha v. Rau, 2007-1726 (La. 2/26/08), 977 So.2d 880. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C. Cr. P. Art. 966 B(2).
In this case, the trial court relied upon Kendrick’s written resignation from employment, submitted as part of the release relating to the 2013 compensation claim, as conclusive proof that Kendrick could not carry his burden of proving retaliatory discharge. Although the trial court’s reasons for judgment were thoughtful, we cannot agree that this case should be decided on summary judgment.
IsBoth below and on appeal, Hercules asserts that Kendrick was dismissed because of the document he signed wherein he resigned from his employment as part of the settlement agreement for the 2013 workers’ comp claim. Standing alone, that document certainly would explain why Kendrick is no longer employed by Hercules, and Kendrick’s failure to read this document before signing it does him no favors. See, e.g., the Supreme Court’s scholarly discussion of unilateral error in Peironnet v. Matador Res. Co., supra.
However, the document does not stand alone. Kendrick asserts that Hercules never relied on this document when Paul Shelley told him that he was fired; instead, Shelley told Kendrick that “he was having to let him go because of lack of work,” a claim that Kendrick’s supervisor immediately repudiated. Further, and more tellingly, Kendrick asserts that he had previously been told by Shelley that Hercules would have to fire Kendrick if he had another workers’ compensation claim, and Kendrick’s termination was coincident in time with a second accident in which Kendrick allegedly suffered an injury.
Although Kendrick’s careless execution of the release wherein he resigned from Hercules is one plausible explanation for the termination of his employment, it is—under these peculiar facts—only one plausible explanation. Kendrick has offered another explanation that is similarly plausible, depending upon a fact-finder’s determination of credibility. To quote Hansford, supra, again:
If the employer offers another reason for firing the workers’ compensation claimant, the trial court must ascertain the employer’s true reason or motive based on the facts presented.... If the trial court finds that it is more probable than not that the employer’s nondiscriminatory explanation for the discharge |9is just a guise for retaliatory discharge, the employee is entitled to recovery.
Hansford, supra at p. 1242. (Citations omitted.)
Here, there remains a genuine dispute of fact whether the employer’s explanation for the discharge—Kendrick’s unwitting resignation—is the real reason for his termination or whether that is a guise for retaliatory discharge. Based upon this record, the question cannot be answered on summary judgment in favor of either party.
CONCLUSION
For the same reasons, Hercules is not entitled to damages for frivolous appeal under La. C.C.P. Art. 2164. Accordingly, the judgment of the trial court is reversed *267 at appellee’s cost, and appellee’s demand for damages for frivolous appeal is denied.
REVERSED AND REMANDED.

. Although the record was lodged with claimant’s first name spelled as "Hurshel” and it is spelled in the record in several other places as "Hurschel,” we will use ''Hurchel” throughout this opinion as this is the correct spelling of claimant’s first name.

. He was so employed from 1994 to 2004 and from 2007 to 2015.